## JULIA A. MOSEY *vs.* THE CITY OF TROY.

It is well settled that in the case of a village or city where the trustees, or common council, are made commissioners of highways, the corporation is liable for their negligence in not keeping the streets and sidewalks, within the corporate limits, in a condition safe for the use of passengers thereon.

Where, in an action against a city, to recover damages for a personal injury sustained by the plaintiff in slipping and falling upon an icy sidewalk, there was evidence tending to show that the ice was an accumulation from the freezing of water flowing from a house conductor upon the sidewalk and extending entirely across it; that it had remained there long enough to warrant the jury in attributing negligence to the defendant, for its continuance; and at the time of the accident, it was covered with a light fall of snow, which covered the ice, and concealed it from the plaintiff's view as she at-

Mosey *v.* City of Troy.

tempted to walk over it; *Held* that the question of negligence on the part of the defendant was, under the evidence, properly submitted to the jury.

*Held, also,* that there was no such manifest negligence on the part of the plaintiff as to call for a nonsuit; and that that question was also properly left to the jury.

*Held, further,* that upon the subject of the necessity of actual notice of the obstruction being brought home to the defendant, the judge was right in refusing to charge that it was necessary; and that he put the case upon a ground sufficiently favorable to the defendant, in charging, as requested, " that the defendant was not liable, unless it appeared that the accumulation of ice at the point in question had remained so long as to make the obstruction public and notorious."

APPEAL by the defendant from a judgment entered upon the verdict of a jury, in favor of the plaintiff, and from an order denying a motion for a new trial.

The action was brought to recover damages for an injury sustained by the plaintiff by falling upon a sidewalk in the city of Troy, in January 1870. The plaintiff, a resident of Vermont, while visiting at Troy, had occasion to pass along River street, and in so doing stepped upon an "icy place" on the sidewalk, fell and fractured her thigh. The defendant, the city of Troy, is a municipal corporation, incorporated in pursuance of an act of the legislature, passed April 12, 1816, and several acts amendatory thereto. By section 15 of said act, the common council are made commissioners of highways in and for the city, and it is made their duty to regulate and keep in repair the streets of said city, and by section 39 they are authorized to make necessary assessments for these purposes; and it is made their duty to keep said streets in repair. By section 48, the act is declared to be a public act, so that courts may take judicial notice of it.

By section 13 of the city ordinances, passed by the common council February 8, 1838, the owner or occupants of any lot in the first, second, third, fourth, *seventh* and eighth wards are required, " before the hour of twelve o'clock at noon next following any day or night in which any snow shall have fallen," to cause " such snow to be cleaned and

removed off from the sidewalk," &c. under a penalty of
$2; and "in case the snow should be congealed upon the
sidewalk," or "in case the sidewalk shall be covered with
ice," &c., the owner or occupant is required "within the
first four hours" thereafter, to cause the same to be strewed
with ashes or sand," under a like penalty. By section 14 it
is provided further, that in case the owner or occupant
"shall neglect to comply with the requirements of section
13, within the time therein limited, it shall be the duty
of the street inspector to cause the snow to be cleared off,"
&c. By an ordinance of the common council, passed
May 17, 1855, the ordinances above cited are made appli-
cable to all the wards of the city.

The injury occurred on the 10th of January, 1870, and
near the premises of Mr. Cheney, in the tenth ward. At
the place where the accident happened, the sidewalk was.
covered with ice of a very slippery character, and this ice
was concealed from observation by a light snow which
had fallen on the 8th of January, two days before the
accident. On the 2d day of January it had rained. On
the 3d there was a south wind, and it was very warm.
On the 4th, 5th, 6th, 7th and 8th it was colder, with fre-
quent light falls of snow. There had been rain, and
warm and thawing weather to make ice, and after that,
and shortly before the accident, snow to cover and con-
ceal it. At the corner of Cheney's building there was a
gutter or conductor that came from the building to con-
duct the water into a tub; the tub had overflowed and the
sidewalk was covered with ice. This water overflowed
and froze upon the sidewalk, and as the city commissioner
testified, had frequently to be cut out. The sidewalk, at
the place of the accident, had been in this condition for a
considerable time, and had frequently been observed by
persons passing along the street, by police officers engaged
in their duties, and by the city commissioner. It was the
duty of this city commissioner to observe the condition of

the streets, and he testified that he did observe their condition.

The defendant's witnesses testified that the sidewalk, at the time of the accident, was in good repair, and in ordinary condition. At the close of the testimony, the defendant's counsel moved for a nonsuit on the grounds: 1st. That there was no negligence on the part of the city, established by the evidence. 2d. That there was no omission of duty on the part of the city in respect to the sidewalk, established by the evidence. 3d. That it appeared, from the evidence, that the plaintiff's own carelessness was the cause of her injury, and that, at all events, her carelessness contributed to produce it.

The motion was denied, and exception taken by the defendant's counsel.

The jury found a verdict in favor of the plaintiff, for $1000.

*R. A. Parmenter,* for the appellant.

I. Upon the evidence, the complaint should have been dismissed, and the court committed an error in denying the motion for a nonsuit, made at the close of the testimony. 1. The defendant's liability for the injury sustained by the plaintiff is predicated on the fact that, by the city charter, the common council of the city of Troy are constituted and declared commissioners of highways in and for the city, and on the assumption that through their negligence or omission of duty, in respect to one of the streets of said city, this accident happened. The duties of commissioners of highways are prescribed by the Revised Statutes. The statute declares that the commissioners of highways, in the several towns in this State, shall have the care and superintendence of the highways and bridges therein, and that it shall be their duty, among other things not material here, to cause the highways and the bridges which are or may be erected over streams intersecting

highways, to be kept in repair, (2 *R. S.* 381, § 1, *5th ed.*) And by the charter of the city of Troy, its common council are constituted and declared commissioners of highways in and for the city, with power, from time to time, to pass such ordinances as they shall deem proper, to regulate, keep in repair, clean and alter the streets, highways, bridges, wharves, docks and slips in said city. (*Charter of* 1816, § 15.) The duty and liability for its neglect are creatures of the statute, and do not grow out of the common law. In Massachusetts, by its statute, that duty devolves on the towns, and they are required to keep the highways " safe and convenient for travelers." (*Stanton* v. *Springfield,* 12 *Allen,* 568.) It will not be denied, that if a municipal corporation, organized under a charter similar to that of the city of Troy, shall negligently suffer a street to get out of repair, or allow an obstruction created by any of its citizens, to remain after knowledge or notice of the same, it will be liable for any injury that may happen to any person, through such negligence, provided, however, the person so injured be not himself chargeable with contributing negligence. (*Wallace* v. *The Mayor &c. of N. Y.,* 18 *How.* 169. *Clark* v. *The City of Lockport,* 49 *Barb.* 580. *Davenport* v. *Ruckman,* 37 *N. Y.* 568. *Conrad* v. *The Trustees of Ithaca,* 16 *id.* 158.) The opinion of Selden, J., adopted by the Court of Appeals, in deciding the case of *Hickok* v. *The Trustees of the village of Plattsburgh,* lays down the principle on which this liability rests, in these words : " That whenever an individual or a corporation, for a consideration received from the sovereign power, has become bound by covenant or agreement, either express or implied, to do certain things, such individual or corporation is liable, in case of neglect to perform such covenant, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect. In all such cases the contract made with the sovereign power is deemed to enure to the benefit of every

individual interested in its performance." (16 *N. Y.* 163.) The cases in which this responsibility has been asserted, vary widely. Where the corporation builds a sewer or directs some other similar improvement to be made, and the same gets out of repair, notice of its defective condition may not be a condition precedent to the liability of the corporation. That was held in *Barton* v. *The City of Syracuse*, (37 *Barb.* 292.) Where, however, an obstruction to a street is made by the act of a citizen, without authority, the corporation will not be liable when notice is not shown to have been received by its officers. This was held in *Griffin* v. *The Mayor &c. of N. Y.* (5 *Seld.* 456.) In another class of cases, where the obstruction which produced the injury is occasioned by the elements, liability will not attach to the corporation unless some neglect on the part of the municipal authorities be shown after knowledge or notice of the obstruction has been brought home to the corporation, and a reasonable time for its removal be given. (*Nason* v. *City of Boston*, 14 *Allen*, 508. *Donaldson* v. *Same*, 16 *Gray*, 511. *Shepherd* v. *Inhabitants of Chelsea*, 4 *Allen*, 113. *Stanton* v. *City of Springfield*, 12 *id.* 566. *Rowell* v. *City of Lowell*, 7 *Gray*, 100. *Kidder* v. *Inhabitants of Dunstable*, *Id.* 104. *Smith* v. *City of Lowell*, 6 *Allen*, 39 ; 97 *Mass.* 268 ; 102 *id.* 329.) And it will be seen that the duty imposed by the Massachusetts statute to regulate and keep in repair the streets and highways is quite as stringent as that imposed by our Revised Statutes. 2. It is submitted, that in the light of the authorities above cited, and of the evidence, construed most favorably for the plaintiff, negligence on the part of the municipal authorities of the city of Troy was not established at the trial of this action. It was proved, and not disputed, that the place where the plaintiff fell was a brick sidewalk properly constructed and in good repair. 3. Nor was sufficient proof given of any omission of duty on the part of the city government, in the management of the

street on which the accident occurred. In truth no defect in, or obstruction to, the sidewalk in question was shown. And moreover, according to the undisputed testimony, the municipal officers having charge of the street department had no knowledge or notice of the pretended obstruction. An injury to a traveler occasioned in this wise, is *damnum absque injuria.* 4. In the case at bar the specific obstruction complained of was caused, not by an act done or directed to be done by the defendant or any of its officers, but solely by the elements, over which the corporation had no control. Human agency had nothing to do with the creation of the obstacle, and intermediate the formation of the ice and the breaking of the limb, no opportunity was afforded for the removal of the obstruction. 5. A municipal government is not an insurer of the life or limbs of persons while traveling the sidewalks, within the territorial limits of the municipality. On that subject, an eminent judge remarked: "But injuries to both person and property will occur, which no legislation can prevent, and which no system of laws can adequately redress. The government does not guaranty its citizens against all the casualties incident to humanity and to civil society; and we believe it has never been called upon to make good, by way of damages, its inability to protect against such misfortunes." (5 *Seld.* 460.) The circuit judge charged that the mere fact that the plaintiff fell, or the mere fact that there was ice to some extent upon the sidewalk, would not entitle her to recover, but at the same time he sanctioned a verdict which established a measure of responsibility scarcely less than that of an insurer. In a climate like our own, the temperature is subject to sudden changes. The courts of Massachusetts hold that the traveler must take cognizance of the climatical changes. The court, in *Stanton* v. *City of Springfield,* (12 *Gray,* 570,) said: "But roads will be damp after rain, and dusty in times of drought. So they will be slippery in seasons of frost, and when the

Mosey *v.* City of Troy.

pavements are wet.    These are states of the road produced
by natural causes, not depending upon the care or skill
with which they have been constructed, and the remedy
for the inconvenience is to have the shoes of animals
sharpened, and for travelers on foot to take corresponding
precautions, so as to avoid slipping."    The good sense of
the foregoing remarks is obvious.    But if the corporation,
as well as the citizen, is bound to know that in winter
season it may rain or snow, thaw or freeze during the
day time, and that such action of the elements may tem-
porarily create partial obstructions to streets and sidewalks,
certainly that knowledge does not impose upon the muni-
cipal authorities the extraordinary duty of guarding the
streets incessantly.    That would be utterly impracticable,
and the law does not impose on a municipal corporation
any such duty.    7. Nor is a municipal corporation under
any legal obligation to remove, or cause to be removed,
from its streets and sidewalks small spots of ice formed by
the action of the elements, and which do not, in the proper
acceptation of the term, constitute an obstruction to the
ordinary use of the street or walk.    In this case there is
no pretense that the whole sidewalk, or any considerable
portion of it, was obstructed by the ice.    Indeed the evi-
dence shows that the ice complained of extended only a
few inches either way, being no larger than a barrel head,
and its location was very near the building belonging to
Cleminshaw.    But the defendant would not be liable for
an injury occasioned solely by the slipperiness of ice on
a public street.    Hoar, J., in the Springfield case above
cited, said: "No reported case is found, in which it has
been decided that a way is defective, merely because it is
slippery, if in all other respects in good order and properly
constructed, and the ice constituting no obstruction except
by its smoothness."    And in a similar case, reported in
the same volume, at page 572, the court said: "But in the
instructions given, we understand the court to have, in

substance, ruled, that the mere fact that the sidewalk was slippery with ice, if, in the opinion of the jury, it was thereby rendered unsafe or inconvenient for travelers, and if the ice had existed for twenty-four hours, would establish the existence of a defect in the way for which the city was responsible. This ruling, for the reasons fully stated in the recent case of *Stanton* v. *Springfield,* we think cannot be supported." 8. The fact that, under the charter, the common council of the city of Troy may pass, or has passed, an ordinance requiring all snow or ice to be removed from the sidewalks by the owners of property adjacent thereto, does not increase the general obligation of the city to keep its streets in proper condition. In the case of *Stanton* v. *City of Springfield,* (12 *Gray,* 571,) the court said : "But as has already been observed, this obligation is not increased or qualified in any degree, and remains the same as it was before such by-laws as these were authorized or enacted." The case at bar discloses no act on the part of the corporation, either of commission or of omission which tends to establish negligence. 9. So, too, on the other branch of the issue, the action cannot be maintained. The plaintiff's own negligence or want of care produced, or at least contributed to produce, the injury. It was incumbent on the plaintiff to prove herself free from fault, however negligent the defendant may have been. As to this proposition there is no conflict of authority. Now all the evidence tends to show that on the occasion of the accident the plaintiff was heedless and careless. She did not take the least precaution for her own safety. The sidewalk was twelve feet in width, which afforded abundant space for the plaintiff to pass over without encountering the ice on which she fell. At that hour, of a cold winter day, when the water which appeared on the sidewalk had congealed into ice, it was her duty to walk with appropriate care and circumspection. The smallest degree of attention on her part would have pre-

Mosey *v.* City of Troy.

vented the disaster. If the law exacts any degree of care on the part of travelers on foot, it is not perceived how this action can be maintained. (*a.*) The day was clear, and all things on the sidewalk were plainly visible. There was nothing to distract or divert the attention of the plaintiff, and nothing intervened to obstruct her vision. Heedlessness, under such circumstances, is inexcusable. (*b.*) The plaintiff was familiar with the locality. She had lived in Troy a great many years. (*c.*) She knew the form, the grade and the condition of the sidewalk, for it was plain to be seen. Therefore, with full knowledge of the exact state of things on the spot where the accident occurred, she took the risk, and the law affords no redress for the serious injury which followed. (*Butterfield* v. *Forester*, 11 *East*, 60.) (*d.*) Whatever ice, whether much or little, there was, at that hour of the day, on this sidewalk, could have been observed by the plaintiff, by the ordinary use of her senses. Indeed she could have failed to see it only by closing her eyes or looking in another direction. But argument is unnecessary on this proposition, for the proof is direct and conclusive, that the plaintiff did see, or might have seen, the icy spot in time to have avoided it, had she chosen to do so. Her sister, only a few feet in advance of the plaintiff, testified that she saw it was icy. She, however, was in a great hurry, and voluntarily assumed the hazard of walking over it, rather than around it, and, in law, she alone is answerable for the consequences. The authorities are clear and decisive on this point. The same rule has been applied where the injured person had carelessly walked into a pit-hole which had been wrongfully dug and negligently exposed by the defendant. (*e.*) It also appears in the evidence that at the time of the accident the plaintiff was not on that portion of the sidewalk ordinarily used by travelers. She was very near the building, where the sun had not softened the ice. The width of the sidewalk was twelve feet, and the

place where she fell was only two or three feet from the building. There remained nine feet in width of the sidewalk over which the plaintiff might have passed safely. It is pretty clear that this accident would not have happened had the plaintiff worn rubbers or stepped more carefully. Her new shoes were smooth, and in striving to keep pace with her more active sister, she accidentally fell. And it is submitted that this action cannot be maintained upon any proper or reasonable aspect of the case, as presented by the evidence. The law and the facts are with the defendant, upon both branches of the motion for a nonsuit. Nor was the testimony so conflicting as to make it necessary or proper to take the opinion of the jury on any material question of fact.

II. The verdict of the jury was clearly against the evidence, and the court should have granted a new trial.

III. The charge to the jury was, in the main, unobjectionable to the defendant, but the propositions were stated in such general terms that a jury of laymen might not be able to apply them to the case under consideration. To overcome that objection the court was requested to charge specifically several propositions of law involved in the action and arising on the evidence. Instead of declining in terms to modify his charge already given, as he, perhaps, might have done, the court passed upon the merits of each proposition, and in doing so several errors were committed which unquestionably influenced the verdict. The several refusals to charge as requested on the question of the necessity of knowledge by, or notice to, the municipal authorities of the alleged obstruction, were erroneous. The ice was produced from natural causes. It was a small spot about the size of a barrel head. Just before the accident, snow had fallen not to exceed one inch in depth. And the court charged that the city was under no obligation to remove such a fall of snow from the sidewalk. Upon this state of facts the court was asked to

Mosey *v.* City of Troy.

charge the jury: 1st. That the defendant would not be liable unless the jury should find from the evidence that knowledge or notice of the obstruction had been brought home to the corporation and a reasonable time for its removal had elapsed at the time the accident happened. 2d. That to render the defendant liable for the injury, the evidence must establish negligence or omission of duty on the part of the corporation, in allowing the obstruction to remain after having knowledge or notice of its existence. 3d. That if the sidewalk was properly constructed, the city would not be liable for an injury produced by a temporary obstruction, unless it also apppeared that with knowledge or notice of its existence, the corporation neglected to remove the obstruction. Each of these propositions was overruled by the court, and exceptions taken. The ruling of the circuit judge would impose as a duty on the common council of Troy, and on commissioners of highways of towns, eternal vigilance, incessant labor, and the expenditure of enormous sums of money, to prevent casualties on the public streets. It is submitted that no good reason can be assigned for charging a municipal corporation, or commissioners of highways, with liability for injuries occasioned by obstructions on a street or highway, temporary in their nature, and produced by the elements, when the public authorities have had no knowledge or notice of the existence of such obstructions nor any reasonable opportunity to remove them.

The court in the general charge erroneously assumes that if the weather be cold enough to produce ice where there is water, the municipal authorities are thereby sufficiently notified of the existence of ice at any given point on the sidewalk, to charge them with negligence if it be allowed to accumulate in such a manner as to injure the traveler in the streets, whether knowledge or notice of such ice was ever in fact brought home to them. This error,

however, was corrected by the court, in his special charge. But that created confusion where clearness should have appeared, and the defendant was the only party prejudiced.

The court also erred in refusing to charge the jury, that if, from the evidence, they should find the sidewalk to have been properly constructed, and in good ordinary repair at and immediately previous to the accident, the plaintiff could not recover. The duty imposed by statute on the common council of the city of Troy; is, in terms, to keep the streets in repair. Where that duty has not been neglected, the corporation is not liable for casualties or accidents happening to persons while using the public streets on business or pleasure.

*Frank H. Bryan* and *E. L. Fursman*, for the respondent.
I. The main question involved in this case is whether, under the proof, the city is liable at all for the injury which the plaintiff sustained on the 10th of January. The corporation is charged with the duty of overseeing its streets and alleys, and in the language of its charter, with "regulating, keeping in repair, cleaning and altering" the same. It is bound to see that its thoroughfares are at all times reasonably safe and convenient for public passage. It cannot relieve itself from this obligation by imposing this same duty upon the owner of lots adjoining its streets. (*Wallace* v. *The Mayor*, 18 *How.* 169. *Wilson* v. *The Mayor*, 1 *Denio*, 595.) In the present case, the city had constructive notice of the condition of the sidewalk at this place. It is the principal street of a populous city. The sidewalk at this point had been in an unsafe and dangerous condition, by reason of ice, for so long a time that it had become notorious, and the corporate authorities may be deemed to have had notice of it from lapse of time. (*Hart* v. *Brooklyn*, 36 *Barb.* 226.) But in this case the city commissioner, whose especial duty it was to oversee the public streets,

had seen and knew of its condition. There was, therefore, actual notice to the proper authority.

II. The ice and snow, at the place where the accident occurred, was an obstruction, within the meaning of the law, to the safe and convenient passage of pedestrians. Anything is an "obstruction" which inconveniences passengers upon a public walk, or imperils their safety. The nature and character of an obstruction, or whether a specified thing is or is not an obstruction, in a public walk, must necessarily depend somewhat upon its location and uses. What would be an inconvenience upon a sidewalk in a large city, thronged with passengers, and would render passage unsafe, might be quite otherwise upon a country road. So the care and attention required to be exercised by the public authorities would be much greater in the one case than in the other. Now, can it be said that this body of ice, concealed by snow, did not render the passage of the street by foot passengers both inconvenient and unsafe? And if it did so render it, was it not an obstruction, within the meaning of the law, quite as much as if it had been a pit-fall? But in this case there was a "gutter," (as it is called by the witness,) or conductor leading the water from an adjoining building into a tub which overflowed, and so covered the walk with ice, that it had frequently to be cut out. This was an open, visible, notorious "obstruction," of which the city had notice, and was the chief cause of the ice upon the sidewalk. The corporate authorities had a duty to perform with reference to this tub. They were bound to take notice of it. Their plain duty was to remove it, or at the very least, to guard carefully against the consequences of leaving it there, so that no harm might befall the passer by; and for their omission to perform this duty, they are liable. (*Hyatt* v. *Rondout*, 44 *Barb.* 385.) The charter gives the city control of its streets and sidewaks. By its own ordinances the city has called first upon the

lot owners to remove ice and snow from the walks, and provided in case of default on the part of the owners, that the proper officers shall do it within a specified time—four hours. They are, therefore, required to take notice, first, of the condition of the sidewalks as to ice and snow; second, as to whether the duty of removal imposed by them upon the owners is performed. In case it is not, they are bound to do it themselves, within a reasonable time. The omission of this duty is negligence on the part of the city, and in case of injury in consequence of such negligence, the city must respond in damages. All persons may lawfully use the sidewalks of a city for passage, and in using them they have the right to assume that the corporation has performed its duty, and that the walk is in a safe condition. In the words of Ch. J. Hunt, the traveler "walks by a faith justified by law, and if his faith is unfounded, and he suffers an injury, the party in fault must respond in damages." (*Davenport* v. *Ruckman*, 37 *N. Y.* 568. *City of Providence* v. *Clapp*, 17 *How. U. S.* 165.)

III. The power to regulate and keep the streets and walks in repair, granted to the city by its charter, imposes the duty upon it to do so. The word "repair," is exceedingly broad and comprehensive. It means such repair as is reasonable for the safety of persons using them. If the removal of ice and snow is necessary to this, the duty of such removal falls upon it. If it omits this duty, it must suffer the consequences in case injury results. Here, the city suffered a "gutter" and tub of water to remain in the street, by reason of which the walk was overflowed with water, which becoming congealed and covered with snow, the plaintiff, passing lawfully along this place, fell and was injured. Shall not the city pay? It does not appear by whom this gutter and tub were erected, but because the city allowed it to remain, they became bound to keep the place in a safe condition for passage. (*Requa* v. *City*

of *Rochester*, *in Ct. of Appeals, Albany Law Journal of May* 20, 1871.)

IV. The several requests to charge were properly refused. The "knowledge or notice" mentioned in the first, fourth and sixth requests to charge, was understood to be *actual*, as distinguished from constructive, notice by reason of lapse of time. This is apparent from the language of the third request, (and which the court charged in terms,) whenever constructive notice is spoken of. Constructive notice is sufficient. There need not be actual notice.

*By the Court*, PARKER, J. This case differs from that of *Durkin* v. *The City of Troy*,(*a*) which was argued with it, and in which we have just granted a new trial, in this, that here is evidence tending to show that the ice upon which the plaintiff fell was an accumulation from the freezing of water flowing from a house conductor upon the sidewalk, and extending entirely across it.; that it had remained there long enough to warrant the jury in attributing negligence to the defendant for its continuance, and at the time of the accident it was covered with a light fall of snow, which covered the ice and concealed it from the plaintiff's view as she attempted to walk over it.

It is well settled that in case of a village or city where the trustees or common council are made commissioners of highways, (as is the case of the city of Troy,) the corporation is liable for their negligence in not keeping the streets and sidewalks within the corporate limits in a condition safe for the use of passengers thereon. (*Clark* v. *City of Lockport*, 49 *Barb.* 580. *Conrad* v. *Village of Ithaca*, 16 *N. Y.* 153. *West* v. *Village of Brockport*, 16 *id.* 158, *n.*)

The question of negligence on the part of the defendant was, under the evidence, properly submitted to the jury, and on the part of the plaintiff there was no such mani-

(*a*) Ante, p. 437.

fest negligence as to call for a nonsuit. That question was also properly left to the jury.

The court in this case avoided the error which occurred in the other case, and when asked by the defendant's counsel to charge that "if the obstruction complained of was plainly visible to the plaintiff, and if she could have seen it by the ordinary use of her senses, the plaintiff is not entitled to recover," did so charge.

On the subject of the necessity of actual notice of the obstruction being brought home to the defendant, the judge was right in refusing to charge that it was necessary, in the various forms requested by the defendant's counsel, and put the case upon a ground sufficiently favorable to the defendant, in charging, as the defendant's counsel requested, "that the defendant was not liable, unless it appeared that the accumulation of ice at the point in question had remained so long as to make the obstruction public and notorious.

I see no ground in this case for disturbing the verdict, and no error of the judge, calling for a reversal of the judgment.

The judgment and order appealed from must be affirmed, with costs.

Judgment affirmed.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, January 2, 1872. *Miller*, P. J., and *Potter* and *Parker*, Justices.]